JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Karen Light

## DEFENDANTS

Provident Life and Accident Insurance Company; UNUM Group

**(b)** County of Residence of First Listed Plaintiff   Philadelphia, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Hamilton, TN
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Bruce L. Neff (NEFF AND ASSOCIATES)
Two Penn Center Plaza, Suite 1212   15th St. and JFK Blvd.
Philadelphia, PA 19102   (215) 564-3331

Attorneys *(If Known)*
Steven J. Schildt (POST & SCHELL, P.C.)
Four Penn Ctr., 13th Fl.   1600 John F. Kennedy Blvd.
Philadelphia, PA 19103   (215) 587-1089

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☐ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☒ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. section 1332

Brief description of cause:
Insurance coverage, breach of contract, and bad faith action

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
> 75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
01/24/2017

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to the appropriate calendar.

Address of Plaintiff: 422 W. Mt. Airy Avenue, Philadelphia, PA 19119

Address of Defendant: 1 Fountain Square, Chattanooga, TN 37402

Place of Accident, Incident or Transaction: Philadelphia County, Pennsylvania
*(Use Reverse Side for Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

    (Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes ☒   No ☐

Does this case involve multidistrict litigation possibilities?    Yes ☐   No ☒

*RELATED CASE, IF ANY:*
Case Number: N/A     Judge N/A     Date Terminated: N/A

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
    Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
    Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
    Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
    Yes ☐   No ☒

CIVIL:

| A. | *Federal Question Cases:* | B. | *Diversity Jurisdiction Cases:* |
|---|---|---|---|
| 1. | ☐ Indemnity Contract, Marine Contract, and All Other Contracts | 1. | ☒ Insurance Contract and Other Contracts |
| 2. | ☐ FELA | 2. | ☐ Airplane Personal Injury |
| 3. | ☐ Jones Act-Personal Injury | 3. | ☐ Assault, Defamation |
| 4. | ☐ Antitrust | 4. | ☐ Marine Personal Injury |
| 5. | ☐ Patent | 5. | ☐ Motor Vehicle Personal Injury |
| 6. | ☐ Labor-Management Relations | 6. | ☐ Other Personal Injury (Please specify) |
| 7. | ☐ Civil Rights | 7. | ☐ Products Liability |
| 8. | ☐ Habeas Corpus | 8. | ☐ Products Liability — Asbestos |
| 9. | ☐ Securities Act(s) Cases | 9. | ☐ All other Diversity Cases (Please specify) |
| 10. | ☐ Social Security Review Cases | | |
| 11. | ☐ All other Federal Question Cases (Please specify) | | |

# ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Steven J. Schildt, Esq. , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

**DATE: January 24, 2017**      _Attorney-at-Law_      79011
     Attorney I.D. #

     **NOTE:**    A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

**DATE: January 24, 2017**      _Attorney-at-Law_      79011
     Attorney I.D. #

CIV. 609 (5/2012)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAREN LIGHT | ) | |
| Plaintiff | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. _____ |
| PROVIDENT LIFE AND ACCIDENT INS. | ) | |
| CO. and UNUM GROUP | ) | |
| Defendants | ) | |

## CASE MANAGEMENT TRACK DESIGNATION FORM

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                 ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.        (X)


| | | |
|---|---|---|
| _1/24/2017_ | _Steven J. Schildt_, **Attorney-at-law** | Defendant |
| **Date** | Steven J. Schildt, **Attorney-at-law** | **Attorney for** |
| _(215) 587-1089_ | _(215) 587-1444_ | sschildt@postschell.com |
| **Telephone** | **FAX Number** | **E-mail Address** |

**(Civ. 660) 10/02**

**POST & SCHELL, P.C.**
BY: STEVEN J. SCHILDT, ESQ.
I.D. # 79011
1600 JFK BLVD., 13TH FLOOR
PHILADELPHIA, PA 19103
PHONE: 215-587-1089
E-MAIL: sschildt@postschell.com

Attorney for Defendants

| | | |
|---|---|---|
| KAREN LIGHT | ) | IN THE COURT OF COMMON PLEAS |
| Plaintiff | ) | PHILADELPHIA COUNTY |
| | ) | |
| vs. | ) | NOVEMBER TERM 2016, NO. 2841 |
| | ) | |
| PROVIDENT LIFE AND ACCIDENT INS. | ) | |
| CO. and UNUM GROUP | ) | |
| Defendants | ) | |
| | ) | |

## DEFENDANTS' NOTICE OF REMOVAL

TO:    Bruce Neff, Esq.
       Neff and Associates
       Two Penn Center Plaza, Suite 1212
       15th Street & JFK Boulevard
       Philadelphia, PA 19102

       Defendants have filed a Notice in the United States District Court for the Eastern District of Pennsylvania for removal of a civil action pursuant to 28 U.S.C. §1441, et seq., now pending in the Court of Common Pleas for Philadelphia County. Said case qualifies under diversity jurisdiction pursuant to 28 U.S.C. §1332. Specifically, the parties are of diverse citizenship and the amount in controversy as alleged in the complaint is more than $75,000. Further, this case also triggers ERISA federal question jurisdiction pursuant to 28 U.S.C. §1331. Defendants have also filed in the Eastern District of Pennsylvania a copy of the complaint served upon it.

                         **POST & SCHELL, P.C.**

            BY:    _____
                   **STEVEN J. SCHILDT, ESQ.**
DATE:  1/25/17           Attorney for Defendants

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KAREN LIGHT | ) | |
|      Plaintiff | ) | CIVIL ACTION |
|   v. | ) | |
| | ) | No. _____ |
| PROVIDENT LIFE AND ACCIDENT INS. | ) | |
| CO. and UNUM GROUP | ) | |
|      Defendants | ) | |

**DEFENDANTS' NOTICE OF REMOVAL**

    1.     On 12/27/16 defendants received service of the complaint. A copy of the complaint and its exhibits are attached hereto.

    2.     Plaintiff's complaint concerns the handling of a claim for disability benefits under a disability insurance policy issued to plaintiff by defendant Provident Life.

    3.     This Court's jurisdiction is based upon diversity of citizenship under 28 U.S.C. § 1332.

    4.     The plaintiff is a citizen of Pennsylvania. See complaint caption and paragraph 1.

    5.     Defendant Provident Life and Accident Insurance Company is incorporated in Tennessee and also has its principal place of business in Chattanooga, Tennessee.

    6.     Defendant Unum Group is incorporated in Delaware and has its principal place of business in Chattanooga, Tennessee. However, in that defendant Unum Group did not issue the insurance policy at issue in this case (i.e., no contractual privity with plaintiff), this entity is improperly named and will be dismissed via either stipulation or motion.

    7.     Nonetheless, we have Pennsylvania versus Tennessee and Delaware, which is complete diversity.

8.     Count 1 of the complaint alleges breach of contract.  Count 2 alleges insurance bad faith and demands attorney fees and punitive damages pursuant to the Pennsylvania insurance bad faith statute.  Paragraph 117.

9.     As to benefit numbers and the amount in controversy, plaintiff alleges she has been totally disabled since July of 2015 and is entitled to $4,020.00 in monthly benefits from July of 2015 up to the present (18 months; $72,360 worth of benefits).  Paragraphs 19 and 29. Plaintiff also demands compensatory damages and future "prospective long-term disability benefits." Paragraph 118.

10.    Further, demands for punitive damages are included in the calculation of the amount in controversy.  See, e.g., Golden v. Golden, 382 F.3d 348, 355 (3d Cir. 2004) ("a request for punitive damages will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum.").

11.    Additionally, when attorney fees are recoverable under an alleged statutory cause of action, such fees are included in the calculation of the amount in controversy.  See, e.g., Suber v. Chrysler Corp., 104 F.3d 578, 585 (3d Cir. 1997) ("attorney's fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action.").

12.    Finally, counts for breach of contract and insurance bad faith can be aggregated to meet the $75,000 amount in controversy requirement.  See, e.g., Ketz v. Progressive Northern Ins. Co., 2007 U.S. Dist. LEXIS 43245, *7-9 (M.D. Pa. 2007); Brown v. Liberty Mut. Fire Ins. Co., 2006 U.S. Dist. LEXIS 76139, *8 (E.D. Pa. 2006).

13.     The instant action satisfies diversity of citizenship jurisdiction pursuant to 28 U.S.C. §1332 because all parties are of diverse citizenship and the amount in controversy as alleged by plaintiff is in excess of $75,000.

14.     Defendants also note that this case qualifies for ERISA federal question jurisdiction pursuant to 28 U.S.C. §1331.  Specifically, ERISA governs this matter pursuant to the following facts (as indicated by the policy and the accompanying application/risk files):

a.      On plaintiff's policy application (attached to the complaint under Exhibit A) question #11 asks: "Will your employer pay for all disability coverage to be carried by you with no portion of the premium to be included in your taxable income?"  Plaintiff responds "Yes."

b.      The policy includes a "SALARY ALLOTMENT PREMIUM RIDER," which states: "In consideration of the Salary Allotment Agreement between your employer and us, we agree to accept Policy Premiums as billed to your employer. The conditions of this rider are: 2.  If your employer fails to pay premiums when due because of clerical error or negligence, your insurance under the policy will not be prejudiced."

c.      For a period of time plaintiff's policy was billed via an employer-paid list bill (which included numerous other insureds) sent to the Medical College of Pennsylvania.  These bulk list bills were paid with checks issued by the Medical College of Pennsylvania.

d.      Plaintiff's policy, via her employer group, was issued to her with a 15% discount.

These facts trigger the applicability of ERISA to this matter.  See, e.g., D'Elia v. Unum Life Ins. Co., 2016 U.S. Dist. LEXIS 108169 (E.D. Pa. 2016); Spillane v. AXA Equitable Life Ins. Co., 648 F. Supp.2d 690 (E.D. Pa. 2009); Harding v. Provident Life & Accident Ins. Co., 809 F. Supp.2d 403 (W.D. Pa. 2011); Viechnicki v. UnumProvident Corp., 2007 U.S. Dist. LEXIS 8959 (E.D. Pa. 2007); Tannenbaum v. Unum Life Ins. Co., 2006 U.S. Dist. LEXIS 66623 (E.D. Pa. 2006); Stone v. Disability Management Services, 288 F. Supp.2d 684 (M.D. Pa. 2003); Keenan v. UnumProvident Corp., 252 F. Supp.2d 163 (E.D. Pa. 2003); Brown v. Paul Revere Life Ins. Co., 2002 U.S. Dist. LEXIS 8994 (E.D. Pa. 2002).

15.    Even though plaintiff's complaint does not mention ERISA on its face, federal question jurisdiction exists pursuant to the doctrine of complete preemption. See, e.g., Scheibler v. Highmark Blue Shield, 2007 U.S. App. LEXIS 12977 (3d Cir. 2007); Shatzer v. Connecticut General Life Ins. Co., 2007 U.S. Dist. LEXIS 30398 (M.D. Pa. 2007) (citing cases).

16.    ERISA invokes federal question jurisdiction and supersedes any and all related state laws pursuant to 29 U.S.C. § 1144. See, e.g., Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58 (1987); Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266 (3d Cir. 2001).

17.    Defendant's Notice of Removal has been filed within 30 days of service of the complaint and is therefore timely under 28 U.S.C. §1446.

18.    Defendant has also filed copies of this Notice with the Prothonotary of the Philadelphia County Court of Common Pleas in order to effect removal of this action pursuant to 28 U.S.C. §1446(d).

POST & SCHELL, P.C.

BY:    s/ Steven J. Schildt
       STEVEN J. SCHILDT, ESQ.
       I.D. # 79011
       Attorney for Defendants
       1600 JFK Blvd., 13th Floor
       Philadelphia, PA 19103
       Phone: 215-587-1089
       E-mail: sschildt@postschell.com

DATE:  1/25/17

4

## <u>CERTIFICATE OF SERVICE AND FILING</u>

I hereby certify that the attached Removal Package has been served and filed this day via

regular mail to the following person(s):

Bruce Neff, Esq.
Neff and Associates
Two Penn Center Plaza, Suite 1212
15th Street & JFK Boulevard
Philadelphia, PA 19102

Prothonotary
Philadelphia County Court of Common Pleas
City Hall
1400 JFK Boulevard
Philadelphia, PA  19107


**POST & SCHELL, P.C.**

**BY:**     **s/ Steven J. Schildt_____**
**STEVEN J. SCHILDT, ESQ.**
**I.D. # 79011**
Attorney for Defendants
1600 JFK Blvd., 13th Floor
Philadelphia, PA 19103
Phone: 215-587-1089
E-mail: sschildt@postschell.com

**DATE:  1/25/17**

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| For Prothonotary Use Only (Docket Number) |
|---|
| **NOVEMBER 2016** |
| E-Filing Number: 1611063720 |
| **002841** |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| KAREN LIGHT | PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 422 W. MT. AIRY AVENUE<br>PHILADELPHIA PA 19119 | 1 FOUNTAIN SQUARE<br>CHATTANOOGA TN 37402 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | UNUM GROUP |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 1 FOUNTAIN SQUARE<br>CHATTANOOGA TN 37402 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 2 | [X] Complaint   [ ] Petition Action   [ ] Notice of Appeal<br>[ ] Writ of Summons   [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| [ ] $50,000.00 or less | [ ] Arbitration | [ ] Mass Tort | [ ] Commerce | [ ] Settlement |
| [X] More than $50,000.00 | [X] Jury | [ ] Savings Action | [ ] Minor Court Appeal | [ ] Minors |
| | [ ] Non-Jury | [ ] Petition | [ ] Statutory Appeals | [ ] W/D/Survival |
| | [ ] Other: | | |

**CASE TYPE AND CODE**

1J - BAD FAITH

**STATUTORY BASIS FOR CAUSE OF ACTION**

**RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)**

**FILED**
**PRO PROTHY**

NOV **30** 2016

**C. FORTE**

**IS CASE SUBJECT TO COORDINATION ORDER?**   YES   NO

---

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>KAREN LIGHT</u>

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| BRUCE L. NEFF | NEFF & ASSOCIATES<br>TWO PENN CENTER SUITE 1212<br>15TH ST & JOHN F KENNEDY BLVD<br>PHILADELPHIA PA 19102 |

| PHONE NUMBER | FAX NUMBER |
|---|---|
| (215) 564-3331 | (215) 564-6952 |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 2415 | bneff@neffandassociates.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| BRUCE NEFF | Wednesday, November 30, 2016, 11:32 am |

FINAL COPY (Approved by the Prothonotary Clerk)

Case ID: 161102841



NEFF AND ASSOCIATES
BY:  BRUCE L. NEFF, ESQUIRE
Identification No:  02415
Two Penn Center Plaza, Suite 1212
15th Street & JFK Boulevard
Philadelphia, PA  19102
(215) 564-3331
(215) 564-6952 (fax)
bneff@neffandassociates.com

ASSESSMENT OF DAMAGES
REQUIRED MAJOR JURY


Attorney for Plaintiff, Karen Light

---

| | | |
|---|---|---|
| Karen Light | : | COURT OF COMMON PLEAS |
| 422 W. Mt. Airy Avenue | | PHILADELPHIA COUNTY |
| Philadelphia, PA 19119 | : | |
| vs. | | |
| Provident Life and Accident | : | |
| Insurance Company | | |
| 1 Fountain Square | : | _____, 2016 |
| Chattanooga, TN 37402 | | |
| and | : | No.: _____ |
| UNUM Group | | |
| 1 Fountain Square | : | |
| Chattanooga, TN 37402 | | |

## CIVIL ACTION COMPLAINT
## 1J – BAD FAITH

**NOTICE**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

**AVISO**

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perer dinero o sus propiedades u ostros derechos importantes para usted

Case ID: 161102841

You should take this paper to your lawyer at once.  If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.

Philadelphia Bar Association
Lawyer Referral
and Information Service
One Reading Center
Philadelphia, Pennsylvania   19107
(215) 238-6333
TYY (215) 451-6197

Lleva esta demanda a un abogado inmediatamente.  Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio.  Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.

Asociacion deLicenciados
de Filadelfia
Servicio de Referencia e
Information Legal
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-6333
TYY (215) 451-6197

1.     Plaintiff, Karen Light, is an adult individual residing at 422 W. Mt. Airy Avenue, Philadelphia, PA 19119.

2.     Defendant, Provident Life and Accident Insurance Company, individually and trading as Provident Insurance Company, is a corporation registered to do business in the Commonwealth of Pennsylvania with a principal place of business located at 1 Fountain Square, Chattanooga, TN 37402.

3.     Defendant, UNUM Group, individually and trading as Provident Insurance Group is a corporation registered to do business in the Commonwealth of Pennsylvania with a principal place of business located at 1 Fountain Square, Chattanooga, TN 37402.

4.     Both Defendants regularly and continuously conduct business activities in Philadelphia County, Commonwealth of Pennsylvania.

5.     At all times material to this Complaint, Plaintiff has resided in the County of Philadelphia, Pennsylvania.

6.     From 1991 until 1995, Plaintiff was in a general psychiatry residency at Eastern Pennsylvania Psychiatric Institute.  Plaintiff's residency began upon completion of training at Wake Forrest Bowman Gray School of Medicine in 1991.

7.     During the time that Plaintiff was in residency at Eastern Pennsylvania Psychiatric Institute she was also a part-time employee of the Psychiatric Emergency Services.

8.     On June 22, 1992, Plaintiff submitted an application for disability insurance to Provident Life and Accident Insurance Company.

9.     Plaintiff's disability policy underlying this matter, policy number 06-337-6077449 (hereinafter referred to as "the policy") was issued by Provident Life Insurance Company on July 17, 1992, retroactive to July 1, 1992. See Exhibit "A".

10.     Defendants claim that the policy was issued in accordance with the premium rate structure used for a benefit plan covering certain employees of MCP/EPPI.

11.     At the time the policy was issued, Plaintiff was not employed by MCP/EPPI.

12.     At the time of her application to Provident Life and Accident Insurance Company the MCP Group disability plan had been cancelled.

13.     As of the date of issuance of the policy, no premiums associated with the policy were paid by any of Plaintiff's employers.

14.     Policy premiums have never been deducted from payroll or otherwise sent to Defendants by any of Plaintiff's employers.

15.     Plaintiff was not a W2 employee of any employer associated with the policy when it was issued.

16.     The policy provides that it is "a legal contract between you and us.  It is issued in consideration of the payment" of the required premium.

17.     The policy also provided that the policy with the application and attached papers comprised "the entire contract between you and us".

18.     The policy defined total disability as "not able to perform the substantial and material duties of your occupation". "Your occupation" is defined as the occupation (or occupations, if more than one) in which you are regularly engaged at the time you became disabled.

19.     As of the policy effective date the benefit amount was $4,020.00 per month. The benefit amount was updated on an annual basis.

20.     Plaintiff has paid all premiums from first issuance in 1992 up to the present day.

21.     On February 28, 2012, Plaintiff entered into a full time employment contract with Chester Crozer Health Access Network. The contract required that she maintain a minimal of 22 scheduled office hours of direct patient care each week. Plaintiff also had the ability to work in private practice.

22.     As a result of various chronic and progressive medical conditions, described in greater detail below, Plaintiff suffered increasing pain in her back, neck, shoulders, wrists and hands, and feet that limited her capacity to function.

23.     Plaintiff worked for Chester Crozer until on or around February 14, 2014.

24.     On or about February 14, 2014, as a result of Plaintiff's progressive conditions, and upon advice of her medical providers, Plaintiff terminated her employment with Chester Crozer.

25.     On or about March 1, 2014, Plaintiff started employment as a Medical Director at UPMC. This was a part-time administrative position that did not include direct patient care duties.

26.     Plaintiff's Medical Director position was an administrative insurance job requiring her to sit nearly 100% of the time.  In addition to computer use, the job required repetitive hand use and periodic travel to Harrisburg, Pennsylvania.

27.     From approximately October 2014 through February 2015, Plaintiff requested work place accommodations from UPMC including voice recognition software, foot mouse, an adjustable desk, ergonomic keyboard, lumbar support and special headphones.

28.     In July 2015, Plaintiff was advised she could no longer use a computer mouse by her hand therapist because it was reinjuring her right arm and preventing improvement.

29.     As of July 2015, Plaintiff was unable to perform any of the duties of her occupation.

30.     The Accommodations were not sufficient to allow Plaintiff to perform the material and substantial duties of her occupation.

31.     Plaintiff's employment as Medical Director with UPMC was terminated by her employer because she could not perform her duties.

32.     On September 20, 2015, Plaintiff submitted individual disability claim forms including the occupation description which indicated that her occupation required constant sitting (67-100%) in an 8 hour day as well as occasional (1-33%) standing and walking.

33.    The submitted claim forms also indicated that Plaintiff's job required driving; mouse use; keyboarding; working under emergency, critical or dangerous situations; meeting deadlines; attention to detail; day to day contact with others; and making independent decisions.

34.    Plaintiff submitted a supplemental sheet with her claim forms detailing things that she could not do or which she had to severely curtail. She informed that she had difficulty physically manipulating materials. She indicated that she could not multitask because she had to use auditory recognition software for typing. Plaintiff indicated that she could not write more than a few lines with a pen. She indicated that she drove a total of 15 miles per week. She had limited ability to prepare food and to carry items. She indicated that she had stopped lifting weights at the gym and that she did not perform exercises involving arms other than PT/OT. She informed Defendant that she did palates with accommodations. She indicated that she was totally unable to do certain other things like hold a phone, use an electric toothbrush, or open/close windows.

35.    Defendants' claim handler Paula Crager performed a "new claim triage" on October 6, 2015.

36.    Crager noted that the disability began May 30, 2014, and Plaintiff's last day working was September 11, 2015. Crager noted that Plaintiff was claiming disability due to intersection syndrome, thoracic outlet syndrome, back sprain and Morton's neuroma.

37.    Crager noted that Dr. Chou (Physical Medicine & Rehabilitation) imposed restrictions and limitations from September 2015 of no lifting/carrying over 5 pounds, no

computer use for over 10 minutes at a time, no writing repetitively, or repetitively use a keyboard/mouse. He noted that Plaintiff could not drive safely.

38.    Chou concluded that brachial plexus surgery might be expected in 1-2 years.

39.    On October 12, 2015, Crager conducted a telephone interview/statement of Plaintiff. Crager confirmed the identity of all Plaintiff's medical providers and conditions. Plaintiff explained her employment situation and that the cause of her termination was that she was unable to keep up with job responsibilities. Plaintiff indicated that she was thinking of applying for social security disability.

40.    The following day Paula Crager wrote to Plaintiff confirming their discussion of October 12, 2015. See Exhibit "B".

41.    Crager indicated that the initial review of Plaintiff's claim had been completed. Crager informed that she was "in the process of requesting medical records" from Plaintiff's medical providers.

42.    Crager informed Plaintiff that Defendants expected to make a decision on her claim within 30 days after receiving a response to the request for information.

43.    Crager's plan was to request medical records for one year prior to May 30, 2014, and to obtain information from Plaintiff's former employer, Crozer Chester Medical Center with respect to her employment there in 2014.

44.    As of November 12, 2015, Defendants had received all of the requested medical records (with the exception of Plaintiff's primary care physician, Dr. Lewis) including Dr. Chou, Dr. Bozentka, Dr. Cohen, Dr. Nahas and Dr. Kulpt.

Case ID: 161102841

45.     An internal clinical review by Defendants' employee Beata B. O'Brien, RN was completed upon receipt of those records.   Nurse O'Brien believed that additional information was needed, in particular, bilateral wrist MRI's, rheumatology office visit notes and Dr. Mazarian's office visit notes.

46.     Plaintiff immediately provided additional information requested by O'Brien concerning her employer and with respect to her rheumatologist, Dr. Mazarian, Dr. Lewis, and the MRIs so that medical records could be obtained.

47.     Defendants received information from Plaintiff's former employer, Crozer Chester on December 3, 2015, confirming that Plaintiff's former occupation required continuous sitting.  Additionally, the employer indicated that standing and walking was not required.

48.     The former employer confirmed the cognitive requirements previously identified by Plaintiff.

49.     Plaintiff learned that Defendants still had not obtained all of her records; so on or about December 8, 2015, Plaintiff called the offices of Dr. Lewis, Jefferson MRI, and the rheumatologist (Schimmer), to assist Defendant in obtaining records.

50.     On December 11, 2015, nurse O'Brien performed an additional clinical review. O'Brien noted that the newly obtained records included a diagnosis of fibromyalgia.  The records also indicated that imaging studies found "compression of the left brachial plexus at left scalene muscles". O'Brien did not know the significance of the imaging study but noted that conservative treatment had failed and that Plaintiff was considering injections.

Case ID: 161102841

51.     O'Brien felt unable to quantify the extent to which Plaintiff was experiencing symptoms and suggested an internal forum discussion concerning Plaintiff's claim to discuss her restrictions and limitations and how they impacted function.

52.     Paula Crager wrote to Plaintiff on December 14th purportedly to update her on the status of the claim. Crager misrepresented that the records of Dr. Lewis and other medical records were forwarded to a clinical consultant to review and that once the review had been completed, she would be in further contact with Plaintiff. O'Brien's clinical review had already taken place. See Exhibit "C".

53.     On December 18, 2015, the internal forum was conducted among Crager; O'Brien; a vocational representative, Andrea Coraccio; Dr. Joseph Antaki; disability analyst, Paula Verducci; and claim representative, Bev Stewart. Defendants' representatives attending this forum determined that it needed more information regarding Plaintiff's employment at Community Care Behavioral Health including her job titles, schedule and duties for the entire period she was an employee.

54.     Defendant received incomplete information from Community Care Behavioral Health on or around December 28th.

55.     On December 21, 2015, Defendants' outside investigator, G4S Compliance and Investigations performed a preliminary investigation on Plaintiff by reviewing information from various databases.

56.     On or about December 28, 2015, Defendants received additional information from UPMC concerning Plaintiff's job description and occupational requirements including the fact that Plaintiff was unable to operate a computer program or work at a desk.

Case ID: 161102841

57.     December 28, 2015, was the first time Defendant had obtained vocational information from UPMC.

58.     As of January 4th, Defendant was still failing to document her job titles, schedule and duties for the entire period she was an employee at Community Care Behavioral Health.

59.     Crager wrote to Plaintiff on January 4th stating Defendants would be "extending the time in which we will be making a decision on your claim until 30 days after we receive additional information." Defendants indicated that it needed to contact Dr. Chou to "clarify the restrictions and limitations due to your claimed medical conditions". See Exhibit "D".

60.     Instead of contacting Dr. Chou, Defendants had G4S conduct surveillance.

61.     On January 5, 2016, G4S conducted surveillance on Plaintiff.  It was observed that an unidentified female fitting Plaintiff's general description exited Plaintiff's house. G4S recorded videotape of an individual driving approximately 30 minutes to a palates class, having coffee at a Starbucks, and purchasing a few small items at a Target.

62.     G4S subsequently reported to Defendants regarding this surveillance.

63.     G4S erroneously reported to Defendants that the individual it filmed participating in the palates class was Plaintiff.

64.     Defendants' employees knowingly disregarded evidence in the video footage that supported Plaintiff's claim.

65.     Alternatively, Plaintiff avers that Defendants' employees recklessly failed to view the video footage.  Instead of viewing the video, Defendants relied on G4S' report.

Case ID: 161102841

66.    G4S did not accurately and objectively report the results of its surveillance.

67.    G4S failed to report to Defendants that the individual shown in the video recording at a palates class was assisted by one and, at times, two instructors during the course of the session.

68.    G4S failed to report to Defendants that the individual shown in the video recording at Starbucks was exclusively using her right hand/arm for all tasks performed at the counter, while eating and in returning to her car.  It was not reported that she was guarding her left hand/arm.

69.    G4S failed to report to Defendants that the individual shown in the video recording at Target was using her right hand/arm abnormally as she had been at the Starbucks.

70.    On January 6, 2016, G4S performed additional surveillance on Plaintiff.  Plaintiff was observed driving to receive acupuncture treatment and returning to her residence.  Later in the day Plaintiff was driven by another individual to the Philadelphia Museum of Art. Plaintiff was shown in the museum. Plaintiff also walked along the Schuylkill River at a pace of 2 miles per hour.  Plaintiff was observed resting in her vehicle for 15-30 minutes before and after each activity.

71.    G4S failed to report to Defendants that the individual shown in the video recording at the Art Museum alternated between standing, walking, and sitting positions; or that she continued to guard her left hand/arm.

72.    G4S failed to report to Defendants that the video recording of an individual walking along the Schuylkill was of such a poor quality that no conclusions could reasonably be drawn there from regarding the quality of her movement.

73.    On both surveillance days, Plaintiff was seen performing various activities, none of which documented activities contrary to the restrictions and limitations set forth in the attending physician statement.

74.    Dr. Antaki, Defendants' internal medical consultant called Dr. Chou on January 12th representing that he needed to gain a better understanding of Dr. Chou's medical opinion and discuss questions he had regarding the available medical data.

75.    Dr. Chou informed Dr. Antaki that Plaintiff's subjective pain complaints were consistent and that she had problems gripping and holding things in her hands due to the pain caused by her thoracic outlet syndrome on the left and intersection syndrome on the right.

76.    On January 14, 2016, Dr. Chou wrote to Dr. Antaki to assure that Dr. Antaki was aware that Plaintiff had objective evidence of left thoracic outlet syndrome as well as right intersection syndrome.  Dr. Chou again pointed out that those conditions were the cause of Plaintiff's problems.  Dr. Chou stated that Dr. Antaki had misrepresented the effect of those conditions in his letter to Dr. Chou which was supposed to have confirmed their conversation.

77.    Crager and Dr. Antaki then decided that the file required a "doctoral review".

78.     On January 22, 2016, Dr. Antaki performed the review concluding that restrictions and limitations were not supported.  Antaki indicated that he would contact Dr. Kulp who had first advised Plaintiff to stop working prior to an additional doctor review.

79.     Dr. Antaki was informed by Kulp's office that he could not provide any further opinion regarding Plaintiff's functional capacity because he had not seen her since September 2014.

80.     After contacting Dr. Kulp's office Dr. Antaki considered recommending an IME but decided there was "sufficient" data to support his opinion.  Antaki recommended an outside medical review.  Defendants were still failing to document her job titles, schedule and duties for the entire period she was an employee at Community Care Behavioral Health as of this time.

81.     As of the date of Antaki's decision not to request an IME (1/22/16) the testing/imaging data on file consisted of a September 2013 cervical spine MRI showing a disc herniations at C5-6, October 2013 left shoulder MRI, August 2014 bilateral writs MRI's, and the May 2015 left brachial plexus ultrasound which showed evidence of compression at the left scalene.  Antaki's opinion was based on the foregoing data.  The only study performed within a year of Antaki's review was the positive brachial plexus ultrasound.

82.     The matter was referred for another opinion from an internal medical officer, Suzanne E. Benson.  When requesting Benson's review, Antaki informed her of the basis of his opinion: the fact that the November 2014 cervical EMG was "normal", his belief that Plaintiff had "intact motor function" and that "her tenderness to palpation and findings on imaging are not of severity to support the described functional limitations".

83.     On January 28, 2016, Dr. Benson completed her review.  Benson agreed with Dr. Antaki's opinion.  In addition, she relied on the fact that there was no recent injection nor was surgery pursued, which led her to opine that treatment choices "were inconsistent" with a moderate or severe conditions.  She also based her opinion on the flawed surveillance report.

84.     On February 8, 2016, Crager recommended to her director that the claim be denied.  Her director agreed and instructed her to write the denial letter. Defendant still had incomplete information regarding her job titles, schedule and duties.

85.     The February 11, 2016, denial letter repeated much of the unreasonable assertions of Defendant's internal medical reviewers concerning the importance of the treating physicians' records.  See Exhibit "E".

86.     Crager also stated that Defendant "requested medical records from Larry Chou, Randal Kulp, Michael Cohen, Stephanie Nahas, David Bozenika, David Lewis, Dr. Mazerian and Barry Schimmer" and implied that he it received and reviewed records from all of those physicians.

87.     In fact, not all of those records had been reviewed.  Crager internally cancelled her request for Barry Schimmer's medical records after the denial.  In March 2016 Defendant received notice that the records request for Thomas Jefferson Health System was incorrectly sent to "inpatient records" and had been forwarded to outpatient records for processing. Defendant also continued requesting Dr. Nahas' medical records.  In addition, Defendant never obtained the records of the acupuncturist from whom Plaintiff received treatment; Defendant was aware of this treatment form the surveillance report.

88.     On March 2, 2016, Plaintiff requested that Defendants send her entire file to Plaintiff's counsel.

89.     Defendants did not provide the file.

90.     Counsel for Plaintiff wrote to Defendants on March 22 requesting the file.

91.     On March 25, 2016, Defendants forwarded a CD with portions of the file not including the surveillance video to Plaintiff's counsel.   Counsel for Plaintiff wrote to Crager asking her to forward the surveillance video.

92.     On April 13, 2016, Defendants forwarded the surveillance video.

93.     On May 12, 2016, Counsel for Plaintiff forwarded a copy of a functional capacity evaluation report demonstrating that Plaintiff did not have the capacity to perform her occupation as she did not have sufficient sitting tolerance or motor skills particularly with respect to her left hand.

94.     On June 28, 2016, Defendants informed counsel for Plaintiff that, regardless of the results of the Functional Capacity Evaluation, it had decided that the original claims denial was correct.  See Exhibit "F".

95.     In addition, Defendants were asserting that Plaintiff's policy was governed by ERISA because of the premium that it charged Plaintiff.

96.     Plaintiff's policy is not governed by ERISA.

97.     On August 8, 2016, Counsel for Plaintiff forwarded notification from the Commonwealth of Pennsylvania Bureau for Professional Occupational Affairs (dated June 22, 2016) that it was placing Plaintiff on inactive duty.

98.     Defendants responded to counsel's August 8, 2016 correspondence on August 18th, informing that its original decision would stand.  Defendants restated the belief that Plaintiff was not experiencing any restrictions or limitations from any of her reported medical or behavioral health conditions which would prevent her from performing the material and substantial duties of her occupation as a psychiatrist.  See Exhibit "G".

99.     Counsel for Plaintiff forwarded a statement from Julie Kline, Plaintiff's ex-wife, detailing the progressive course of Plaintiff's physical limitations and pain on September 29, 2016.  Defendants did not respond to the aforementioned correspondence.

100.     On November 28, 2016, counsel for Plaintiff forwarded records of the acupuncturist which Defendants failed to obtain.  These records demonstrated that Plaintiff required acupuncture, for which she paid at her own expense, from October 2014 to the present and still was unable to perform the material duties of her occupation.

### COUNT ONE - BREACH OF CONTRACT
### PLAINTIFF v. PROVIDENT LIFE AND ACCIDENT
### INSURANCE COMPANY AND UNUM GROUP

101.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 100, as if set forth herein at length.

102.     At all materials times, Plaintiff's physical and cognitive impairments left her unable to perform the material duties of her occupation.

Case ID: 161102841

103.   Defendants' failure and refusal to pay benefits to which Plaintiff is entitled is a breach of the terms of the policy.

104.   Accordingly, Plaintiff is entitled to judgment in the amount of back benefits and future long-term disability benefits.

WHEREFORE, Plaintiff, Karen Light, demands judgment in her favor and against Defendants, jointly and/or severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, together with interest, costs, delay damages and any other relief this Court deems just.

## COUNT TWO – BAD FAITH
## PLAINTIFF v. PROVIDENT LIFE AND ACCIDENT
## INSURANCE COMPANY AND UNUM GROUP

105.   Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 104, as if set forth herein at length.

106.   Defendants committed bad faith in failing to fulfill its contractual duty of good faith and fair dealing.

107.   As set forth above, Defendants engaged in the following activities which are prohibited by law and violated the following sections of the unfair insurance practices act and/or unfair claims handling act and evidenced Defendants' bad faith.

    a.  §146.4 misrepresentation of policy provisions;

    b.  §146.5 failure to acknowledge pertinent communications;

    c.  §146.6 failure to promptly investigate claims;

    d.  §117.5(a)(10)(i)  misrepresenting policy or contract provisions relating to coverage issues

    e.  §117.5(a)(10)(ii) failing to acknowledge and act promptly upon written or oral communications with respect to claims;

    f.  §117.5(a)(10)(iii) failing to adopt and implement reasonable standards

for the prompt investigation of claims;

    g. §117.5(a)(10)(iv) refusing to pay claims without conducting a reasonable investigation based on all information available;

    h. §117.5(a)(10)(v) not attempting to effectuate prompt, fair and equitable settlement of claims in which the companies and liability under the policy has become reasonably clear;

    i. §117.5(a)(10)(vii) compelling persons to institute litigation to recover amounts due under an insurance policy by offering a substantially less than the amounts due and ultimately recovered.

108.    Defendants committed bad faith by placing their own financial interests above the interests of their inured.

109.    Defendants committed bad faith by violating their duty of honesty to their insured.

110.    Defendants committed bad faith by violating their duty of fair dealing with their insured.

111.    In making its final decision, Defendants committed bad faith in so far they violated their duty of fair dealing as set forth below:

    a. relied on medical tests that were performed prior to the time at which Plaintiff claimed disability for progressive conditions.

    b. based their denial on the absence of conditions or symptoms that Plaintiff did not claim;

    c. ignored the subjective complaints that Plaintiff made to her medical providers;

    d. misrepresenting that Plaintiff's claim was governed by ERISA;

    e. arbitrarily determined a time at which Plaintiff's claim was closed based on its erroneous determination that ERISA applied to Plaintiff's claim.

    f. decided not to obtain an independent medical evaluation;

    g. decided Plaintiff's claim without obtaining complete medical records;

h. failed to consider that Plaintiff was required to travel long distances in her occupation;

i. relied on Plaintiff's treatment choices and a lack of surgical intervention with respect to conditions for which surgery was not an option;

j. denied Plaintiff's claim on the basis of an absence of objective testing for conditions that are not subject to objective testing;

k. failed to considered the fact that Plaintiff suffered from brachia plexus compression;

l. failed to consider the results from the functional capacity evaluation;

m. limited the time period for its review of Plaintiff's claim despite the fact the policy providing benefits has been continuously in force;

n. considered Plaintiff's resignation;

o. considered the fact that Plaintiff might be assisted in performing the duties of her occupation by mechanical devices contrary to the terms of the policy which does not permit such condition;

p. relied on a surveillance video which did not show activities contrary to Plaintiff's medical restrictions and limitations;

q. relied on a surveillance video which depicted an individual, not Plaintiff performing exercise activities;

r. misrepresented to Plaintiff the activities visible on its surveillance video when it either did not view the video or could not adequately assure Plaintiff was visible thereon;

s. ignored the quality of Plaintiff's movement depicted on the video; including her gate, and left arm guarding that supported disability;

t. relied on its surveillance video when no activities depicted therein contradicted the results of Plaintiff's functional capacity evaluation;

u. misrepresented that the activities depicted in the surveillance video were not consisted with the symptoms of fibromyalgia.

v. never clarified Plaintiff's restrictions and limitations despite a lack of clear understanding thereof;

w. denied Plaintiff's claim on the basis that she participated in a aerobic exercise when such exercise was recommended for her fibromyalgia;

x. denied Plaintiff's claim without considering the fact that she had cervical herniations;

y. failed to fully consider her job titles, schedule and duties.

112.    As a result of Defendants' conduct, Plaintiff has not received benefits in a timely fashion and is entitled to an award of interest.

113.    In addition, Plaintiff was forced to hire an attorney and is entitled to an award of attorney's fees.

114.    As set forth with specificity above, Defendants' denial was frivolous and unfounded.

115.    As forth with specificity above, Defendants did not have a reasonable basis for denying benefits and knew or recklessly disregarded the lack of a reasonable basis.

116.    As set forth with specificity above, the aforementioned conduct was outrageous, warranting the imposition of punitive damages.

117.    Defendants' conduct was a violation of 42 P.S. §8371 warranting the payment of compensatory damages, interest of prime plus 3%, costs, attorney's fees and punitive damages.

118.    Accordingly, Plaintiff is entitled to a judgment in the amount of back benefits and prospective long-term disability benefits and compensatory damages, as well as punitive damages, interest, attorney's fees and costs.

WHEREFORE, Plaintiff, Karen Light, demands judgment in her favor and against Defendants, jointly and/or severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, together with interest, costs, delay damages and any other relief this Court deems just.

NEFF AND ASSOCIATES

Date: November 30, 2016

BY: _____

BRUCE L. NEFF, ESQUIRE
Attorney for Plaintiff, Karen Light

## VERIFICATION

Karen Light , states that she is the Plaintiff named herein; that she is acquainted with the facts set forth in the foregoing Civil Action Complaint ; that the same are true and correct to the best of her information, knowledge and belief; and that this statement is made subject to the penalties of 18 PA C.S. §4904 relating to unsworn falsification to authorities.

_Karen Lee Light_

Case ID: 161102841



# EXHIBIT A

Case ID: 161102841

# YOUR OUTLINE OF COVERAGE

(PLEASE KEEP WITH YOUR POLICY)

**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY**

1 FOUNTAIN SQUARE
CHATTANOOGA, TN 37402

1815 (Rev. 4/85)

Case ID: 161102841

DISABILITY INCOME PROTECTION COVERAGE

REQUIRED OUTLINE OF COVERAGE

POLICY SERIES 337

1. **READ YOUR POLICY CAREFULLY**

This outline of coverage provides a very brief description of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself sets forth in detail the rights and obligations of both you and your insurance company. It is, therefore, important that you READ YOUR POLICY CAREFULLY.

2. **DISABILITY INCOME PROTECTION COVERAGE**

Policies of this category are designed to provide, to persons insured, coverage for disabilities resulting from covered Injuries or Sickness, subject to any limitations set forth in the policy. Coverage is not provided for basic hospital, basic medical-surgical, or major-medical expenses.

3. **BENEFITS**

a. **General Definitions**

**Benefit Schedule** means the schedule of benefits attached to this Outline.

**Elimination Period** means the number of days of disability that must elapse in a period of disability before benefits become payable. The number of days is shown in this Outline's Benefit Schedule. These days need not be consecutive; they can be accumulated during a period of disability to satisfy an Elimination Period. Benefits are not payable, nor do they accrue, during an Elimination Period.

If the Elimination Period is fulfilled during a period of disability, the first subsequent disability due to a different or unrelated cause will not require an Elimination Period, provided the first subsequent disability occurs within the twelve month period from the end of the prior disability, during which the Elimination Period was satisfied.

**Total Disability** or **totally disabled** means that due to Injuries or Sickness:

1. you are not able to perform the substantial and material duties of your occupation; and
2. you are receiving care by a Physician which is appropriate for the condition causing the disability. We will waive this requirement when continued care would be of no benefit to you.

**your occupation** means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you became disabled. If your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem your specialty to be your occupation.

**b. Basic Benefits of Your Policy**

The basic Monthly Benefit for Total Disability is shown in the Benefit Schedule. Benefits start on the day of Total Disability after the Elimination Period. Benefits are payable for as long as the applicable maximum benefit periods also shown in the Benefit Schedule.

**UPDATE** - This benefit provides for automatic increases in your Monthly Benefit for Total Disability. Refer to the policy schedule in your policy for details.

**Presumptive Total Disability** - You will be presumed totally disabled if Injuries or Sickness result in the entire and permanent loss of: 1) speech; 2) hearing in both ears; 3) sight of both eyes; or 4) use of both hands, both feet, or one hand and one foot.

The basic Monthly Benefit for Total Disability will be paid even if you can work. Further medical care will not be required. Benefits will be payable for the Benefit Period stated in the Benefit Schedule. If loss occurs before your 65th birthday, benefits will be payable for life.

**Waiver of Premium** - After you have been disabled for 90 days during a period of total and/or residual disability we will:

1. refund any premiums which became due and were paid while you were totally and/or residually disabled; and
2. waive the payment of each premium which thereafter becomes due for as long as the period of disability lasts. After it ends, to keep your policy in force, you must again pay any premiums which become due.

**Transplant Surgery** - If you are disabled because you donate a part of your body to another person, we will consider it to be the result of a Sickness.

**Cosmetic Surgery** - If you are disabled from surgery to improve your appearance or correct disfigurement, we will consider it to be the result of a Sickness.

**Rehabilitation** - You may participate in a program of occupational rehabilitation while disabled. This will not of itself affect Total Disability payments. If we approve the program we will pay for certain training expenses that you incur.

**c. Additional Benefits**

The following optional benefits are also a part of your policy and are shown in the Benefit Schedule. Additional premium is required.

KAREN L LIGHT MD 06-337-6077449

**Residual Disability/Recovery Benefits** pay a percentage of the Total Disability Monthly Benefit when, due to Injuries or Sickness, you suffer a loss of earnings of 20% or more, and are receiving care by a physician. (During the Elimination Period only, you must not be able to work fully because of the Injuries or Sickness.) A loss of earnings over 75% is deemed a 100% loss and 100% of your Total Disability Monthly Benefit will be paid. Residual benefits are payable for as long as stated in the policy.

When a disability lasts more than one year, Cost of Living indexing (based on the Consumer Price Index) will be applied to your pre-disability earnings. As they increase, your loss of earnings becomes greater and this, in turn, produces increases in your Residual Disability Monthly Benefit.

**Guaranteed Physical Insurability/Long Term Disability Option** guarantees the option to purchase future coverage to your 55th birthday.

## 4. EXCLUSIONS

This policy does not cover loss caused by:

1. war or any act of war; or

2. normal pregnancy or childbirth. Complications of pregnancy are covered. See your policy for details.

Pre-existing conditions: A pre-existing condition, as defined by the policy, will be covered if it is disclosed and not misrepresented in answer to a question in your application, and we do not specifically exclude it from coverage.

If there are any additional exclusions, they will be referred to in the Policy Schedule. If there is an exclusion or limitation which applies only to a benefit rider added after the policy is issued, it will be included with the rider.

## 5. RENEWABILITY OF YOUR POLICY

**Non-Cancellable and Guaranteed Continuable At Guaranteed Premiums To Your 65th BIrthday or For Five Years, Whichever Is Later:** You can continue this policy to your 65th birthday or for five years, whichever is later, by paying premiums on time.

**Conditional Right to Renew After Your 65th Birthday or Five Years, Whichever Is Later:** Premiums are not Guaranteed: You can renew this policy as long as you are actively and gainfully working full time; there is no age limit. You must pay premiums on time at our rates then in effect at time of renewal. The basic policy, if renewed before your 75th birthday, will provide a 24 month maximum benefit period for Total Disability and Presumptive Total Disability. A 12 month maximum benefit period will be provided if the policy is renewed on or after your 75th birthday.

If the policy is continued, all of the basic benefit provisions will be included in the continued policy. Any additional benefit provision contained in the policy will not be included unless it is so named as one that will be included in the continued policy.
337-PS-L-OC-PA

KAREN L LIGHT MD 06-337-6077449

# BENEFIT SCHEDULE FOR THIS OUTLINE

--------------------------------------------------------------------------------

--------------------------------------------------------------------------------

Elimination Period                          90 days of Total and/or Residual Disability

Monthly Benefit for Total Disability                        $3,500.00

Maximum Benefit Periods:

**Injuries or Sickness:**
    Total Disability starting before your 61st birthday  ...  to your 65th birthday
    Total Disability starting on or after your 61st birthday
      but before your 62nd birthday  ....................................  48 months
    Total Disability starting on or after your 62nd birthday
      but before your 63rd birthday  ....................................  42 months
    Total Disability starting on or after your 63rd birthday
      but before your 64th birthday  ....................................  36 months
    Total Disability starting on or after your 64th birthday
      but before your 65th birthday  ....................................  30 months
    Total Disability starting on or after your 65th birthday
      but before your 75th birthday  ....................................  24 months
    Total Disability starting on or after your 75th birthday  ..........  12 months

------------------------------------ADDITIONAL BENEFITS-------------------------------

Residual Disability/Recovery Benefit

Guaranteed Physical Insurability/Long Term Disability Option
    Total Maximum Increase is $5,250.00

        This Outline of Coverage was prepared on 08/13/2013 and
    replaces any previous description of coverage furnished you.

Policy Number 1607746841   Case ID: 161102841

Insured – KAREN L LIGHT MD

R-0533-6077449

№ 108859

I hereby apply to Provident Life and Accident Insurance Company for insurance based on the following representations:

**1.** (a) Full name? (Print)  Karen Lee Light   (b) Sex? M ☐  F ☒

(c) Height? ft. 5 in. 3   (d) Weight? lbs. 125   (e) Date of Birth? 11-19-65   (f) Birthplace? Washington, DC

**2.** (a) Occupation: physician

(c) Employer: MCP/EPPI   (b) Exact duties: Taking care of sick people

(d) Are you actively at work fulltime in the above occupation? Yes ☒ No ☐   (e) Length of Employment: 1 year

**3.** (a) Annual Earned Income From Your Occupation for Federal Tax Purposes (After Business Expenses, if any):

| | Current Annual Rate of Earned Income | Actual Prior Calendar Year | Actual Year Prior to Last Calendar Year |
|---|---|---|---|
| Salary | $ 27,500 | $ 14,000 | $ 0 |
| Other (Describe) | $ 0 | $ 0 | $ 0 |
| (b) Unearned Income Prior 2 Years (Interest, Dividends, etc.) | $ 0 | $ 0 | $ 0 |

**4.** (a) Do you have or are you applying for other: (1) Individual, (2) Association, (3) Group, or (4) Employer Sick Pay disability income coverage; or (5) Overhead Expense disability coverage? Yes ☒ No ☐ (If "Yes" give details below)

| Company or Source | Type (1, 2, 3, 4 or 5) | Monthly Disability Amount | Benefit Period Accident | Sickness |
|---|---|---|---|---|
| MCP | Group | cancelled | | |

? → (b) Do you have Social Security substitute coverage? Yes ☐ No ☒ Amount $_____ Company_____

? → (c) Is any coverage to be replaced by the coverage applied for? Yes ☐ No ☒ If "Yes", complete Form 1336-Q4.

(d) Does your net worth exceed $4,000,000? Yes ☐ No ☒ If "Yes" complete Form 1336-NW.

(e) Have you smoked cigarettes within the last 12 months? Yes ☐ No ☒

**5.** Have you ever been medically diagnosed as having or been treated for:

| | | Yes | No |
|---|---|---|---|
| (a) | High blood pressure, diabetes, cancer, arthritis, asthma, emphysema, or emotional, nervous or mental disorder, or disease or disorder of the eyes, ears or speech? | ☐ | ☒ |
| (b) | Disease or disorder of the neck, back, spine, heart, lungs, breasts, or the circulatory, digestive, urinary or reproductive systems? | ☐ | ☒ |
| **6.** | Have you ever been diagnosed by a member of the medical profession as having Acquired Immune Deficiency Syndrome (AIDS) or Aids Related Complex (ARC)? | ☐ | ☒ |
| **7.** | Have you ever used barbiturates, narcotics, excitants or hallucinogens, or ever sought help or treatment for their use or alcohol use? | ☐ | ☒ |
| **8.** | Other than above, have you, within the past 5 years, had medical or surgical advice or treatment, had a physical examination, or been under observation for any disease or disorder? | ☒ | ☐ |
| **9.** | Have you ever made application for Disability, Health or Life Insurance which has been declined, modified or rated? (If "Yes", give names of organization, kinds of insurance, dates and reasons.) | ☐ | ☒ |
| **10.** | Do you have a physical impairment or deformity, or take any type of prescribed medication? | ☒ | ☐ |

(Give details of "Yes" answers to Q5-10. Include diagnoses, dates, physicians and addresses)

routine physical exams
acne - on Erythromycin chronically
Myopia - eyeglasses

**11.** (a) Will your employer pay for all disability coverage to be carried by you with no portion of the premium to be included in your taxable income? Yes ☒ No ☐ (b) How much premium is paid with this application? _____

To the best of my knowledge and belief, all of the foregoing statements and all of those in Part II, if any, of this Application are true, complete, and correctly stated. They are offered to Provident Life and Accident Insurance Company as the basis for any insurance issued on this Application. I have received a disclosure concerning: (1) the Medical Information Bureau; and (2) an investigative consumer report which may be made for use with this Application.

I authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organizations, institution or person that has any records or knowledge of me or my health, to give to Provident Life and Accident Insurance Company and/or its reinsurers any such information.

I authorize all said sources, except the Medical Information Bureau, to give such records or knowledge to Equifax, Inc. This agency is employed by Provident Life and Accident Insurance Company to collect and send such information. A copy of this authorization shall be as valid as the original. Signature of

Signed at   Phila, PA   Proposed Insured X  Karen Lee Light, MD
          City      State

this 22 day of  June  19 92   I certify that I have truly and accurately recorded on this application the information supplied by the Proposed Insured.

Field Office: 37966-002 IEG

Form 1336-PA   Patricia A Read   Case ID: 161102841
(Licensed Agent's or Broker's Signature)

# EXHIBIT B

Case ID: 161102841

Unum
The Benefit Center
PO Box 100262
Columbia, SC 29202
Phone: 1-888-226-7959
Fax: 1-866-562-4794
www.unum.com



October 13, 2015

KAREN LEE LIGHT MD
422 W MOUNT AIRY AVE
PHILADELPHIA, PA 19119

RE:   Light, Karen Lee                  DOB: November 19, 1965
      Claim Number(s):                  5206077449002
      Provident Life and Accident Insurance Company

Dear Dr. Light:

Thank you for speaking with me on October 12, 2015 about the status of your Individual Disability claim. This letter confirms the details of our conversation. You have my commitment to provide you with responsive and courteous service. I can be reached at 1-888-226-7959, extension 75157.

I have completed my initial review. This letter, which contains the following sections, will help you understand your coverage and the current status of your claim.

- Summary of Your Claim

- Explanation of Current Status

- Information Needed From You

- What You Can Expect Next

- Policy provisions/definitions

1242-03    UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES.

Case ID: 161102841

Claimant Name: Light, Karen Lee
Claim Number: 5206077449002

## Summary of Your Claim

Based on the claim forms submitted and the information gathered during our telephone conversation, it is our understanding your occupation is that of a psychiatrist.  You were employed by Community Care Behavioral Health as the Regional Medical Director (100% administrative position-no patient care) working 20 hours a week.  You reported that due to your medical condition(s) which affected your ability to perform your occupational duties, you were demoted on July 26, 2015 and began working as a case reviewer of electronic medical records. You voluntarily terminated your employment on September 11, 2015.

You are claiming disability due to Thoracic Outlet Syndrome, intersectional hand syndrome, back pain and Morton's Neuroma. You reported that these medical conditions began impacting your ability to perform your occupational duties beginning May 30, 3014 however, you continued to work.  Although you stopped working on September 11, 2015, your attending physician, Dr. Larry Chou indicated that he advised you to cease working on September 21, 2015 due to your medical conditions.

As such, we will be using September 21, 2015 as the onset date of Total Disability while we continue our evaluation to determine if an earlier onset date of Residual Disability (for the period from May 30, 2014 to September 11, 2015) can be utilized.

Given the nature of your medical conditions we will be administering your claim under the Sickness Provision of your policy.

If we have misunderstood any of the above information, please contact us immediately.

Policy Information

You were issued policy # 6077449 which is a Provident Life and Accident Insurance Company 337 Disability Income Policy that contains provisions for Total and Residual Disability.  This policy provides a monthly Total Disability benefit in the amount of $4,950 following a 90-day Elimination Period during which benefits are not payable nor do they accrue. The Maximum Benefit Period payable for Total Disability starting before your 61st birthday is to your 65th birthday (November 19, 2030), as long as you remain disabled according to the terms of your policy.

This policy also contains a Waiver of Premium benefit.  Please be advised, you are responsible to continue paying your premiums which become due on your policy until we advise you otherwise.  Should we determine you qualify for benefits according to the provisions of your policy; any premiums paid during your disability period will be refunded to you in accordance with the terms of the Waiver of Premium Benefit.

## Explanation of Current Status

Your policy provides monthly disability benefits when you are determined to be disabled as defined under the policy and you meet all other policy requirements.

In order to obtain the medical information we need to continue our evaluation of your claim we are in the process of requesting medical records from Drs. Larry Chou, David Lewis, David Bozentka, Randall Culp, Stephanie Nahas and Michael Cohen.

Claimant Name: Light, Karen Lee
Claim Number: 5208077449002

October 13, 2015
Page 3 of 4

We have also requested occupational information from your former employers.

To assist us in verifying your occupation and sources of income, please provide us with a copy of your 2013 and 2014 personal and business tax returns including all schedules, attachments, W-2s, 1099s and K-1s as applicable.

In addition, please provide us with a copy of your 2015 paycheck stubs.

Please be assured that we will protect your right to privacy. This confidential information will not be disclosed to anyone unless authorized by you, or we are required to do so pursuant to a subpoena, statutory authority or court order.

We are unable to make a decision until we receive a response to our requests for the information requested above. Once this information is received and reviewed, or should we need additional information, we will be in further contact with you.

We expect to make a decision on your claim within 30 days after receiving a response to our requests; however, it is possible that we may need a further extension at that time. If the requested information is not provided within 45 days of the date of our request, we may make a decision on your claim at that time. We will keep you informed through regular status letters.

We will provide you with a status update every 30 days. We would appreciate any help you can provide to ensure that we receive the requested information in a timely manner.

We further understand that you may be applying for Social Security Disability benefits. If you are awarded Social Security Disability benefits, we will likely afford the Social Security Administration's decision significant weight in our review, depending on the unique facts of your claim. Send in any information you would like for us to consider in this review, such as a copy of your Social Security file and the award letter, if applicable.

In addition, we received your claim forms on October 1, 2015 for a claimed disability that you reported began on May 30, 2014.

Your Individual Disability Policy sets specific time frames to advise us of written notice of a claim, and to provide us with medical and other information about your claim for benefits.

These requirements exist to ensure we are able to conduct a fair and objective claim review. The more time that passes between the date of disability and the claim evaluation process; the more difficult and sometimes impossible it becomes for us to verify the extent and severity of your impairment.

**Information Needed From You**

- A copy of your 2013 and 2014 personal and business tax returns including all schedules, attachments, W-2s, 1099s and K-1s as applicable.
- A copy of your 2015 paycheck stubs
- Please provide us with a written explanation as to why you did not file the claim sooner.

Please fax this information to 1-866-562-4794 by November 13, 2015. Privacy is important to everyone; please be sure you are faxing to 1-866-562-4794 to eliminate the potential for

Case ID: 161102841

misdirected information.  If the information cannot be faxed, please mail to the address provided at the top of this letter.

## Independent Medical Review

Our evaluation of your medical restrictions and limitations includes a review of your medical records.  As we perform our review of your claim, it is your right, or the right of your attending physician, either directly or through your representative, to request an "independent medical examination" (IME) should opinions differ on the degree of medical impairment.  Any such request will be evaluated under our IME protocol and guidelines including consideration of whether our decision is related to your medical condition. We will consider your request in a timely manner and provide you with our response in writing.

## Policy Provisions/Definitions

### Individual Disability Policy #6077449

We have included a copy of your Individual Disability Policy #6077449 for your reference.  The Policy provisions and/or definitions referred to in this letter can be found in this policy.

| | |
|---|---|
| Page 3 | Policy Schedule – Maximum Benefit Period |
| Page 4 | Total Disability – Your Occupation – Elimination Period |
| Page 8-9 | Residual Disability (should we determine you were working in a limited basis beginning May 30, 2014) |
| Page 11 | Waiver of Premium |

Dr. Light, if you have questions about your claim or this process, please call our Contact Center at 1-888-226-7959, 8 a.m. to 8 p.m. Eastern Time, Monday through Friday.  If you prefer to speak with me personally, I can be reached at the same toll-free number at extension, 75157. We will identify your claim by your Social Security number or claim number, please have one of these numbers available when you call.

Sincerely,

*Paula M Krager*

Paula M Krager
Senior Disability Benefits Specialist


Enclosures:    Policy: Contract

# EXHIBIT C

Case ID: 161102841

Unum
The Benefit Center
PO Box 100262
Columbia, SC 29202
Phone: **1-888-226-7959**
Fax: 1-866-562-4794
www.unum.com



December 14, 2015

KAREN LEE LIGHT MD
422 W MOUNT AIRY AVE
PHILADELPHIA, PA 19119

RE: Light, Karen Lee    DOB: November 19, 1965
   Claim Number:    5206077449002
   Provident Life and Accident Insurance Company

Dear Dr. Light:

We are writing to update you on the status of your Individual Disability claim.

It is our understanding your occupation is that of a psychiatrist. You were employed by
Community Care Behavioral Health as the Regional Medical Director (100% administrative
position-no patient care) working 20 hours a week. You reported that due to your medical
condition(s) which affected your ability to perform your occupational duties, you were demoted
on July 26, 2015 and began working as a case reviewer of electronic medical records. You
voluntarily terminated your employment on September 11, 2015.

You are claiming disability due to Thoracic Outlet Syndrome, intersectional hand syndrome,
back pain and Morton's Neuroma. You reported that these medical conditions began impacting
your ability to perform your occupational duties beginning May 30, 3014 however, you continued
to work, although you stopped working on September 11, 2015. Your attending physician, Dr.
Larry Chou indicated that he advised you to cease working on September 21, 2015 due to your
medical conditions.

In our November 10, 2015 letter, we advised that we were extending the time in which we will
be making a decision on your claim until 30 days after we receive a response to our request for
necessary information.

We received the medical records from Dr. David Lewis.   This information along with the other
medical records received were forwarded to our clinical consultant to review.

We also received the 2015 pay check stubs.   The financial information received to date has
been forwarded to our Financial Consultant to review.

Once these reviews have been completed, we will be in further contact with you.

As we discussed during our December 11, 2015 telephone conversation, we have yet to receive
a response to our request for occupational information from Community Health Care.   As you
requested, we forwarded our inquiry to Dr. James Schuster to complete.   To expedite receipt of

02875005267355101

Case ID: 161102841

his response, please contact Dr. Schuster and ask that he provide the information requested as soon as possible.

Dr. Light, if you have any questions about your claim or this process, please contact me at 1-888-226-7959, extension 75157.

Sincerely,

*Paula M Krager*

Paula M Krager
Senior Disability Benefits Specialist

02875005267355102

Case ID: 161102841

# EXHIBIT D

Case ID: 161102841

Unum
The Benefit Center
PO Box 100262
Columbia, SC 29202
Phone: 1-888-226-7959
Fax: 1-866-562-4794
www.unum.com



January 4, 2016

KAREN LEE LIGHT MD
422 W MOUNT AIRY AVE
PHILADELPHIA, PA 19119

RE:   Light, Karen Lee              DOB: November 19, 1965
      Claim Number:                 5206077449002
      Provident Life and Accident Insurance Company

Dear Dr. Light:

We are writing to let you know that we will be extending the time in which we will be making a decision on your claim until 30 days after we receive a response to our request for necessary information.

As communicated to you in our December 14, 2015 letter, the medical records received to date were forwarded to our clinical consultant to review.  Based on our review, the restrictions and limitations asserted by Dr. Larry Chou on the Attending Physician Statement dated September 21, 2015 (last Attending Physician Statement received) are unclear.  In order to clarify this information, your file was forwarded to our Physician to contact Dr. Chou to discuss the medical information available.

Once this telephone conversation has taken place we will be in further contact with you regarding our decision on your claim.

If we are unable to speak with Dr. Chou, our Physician will send written correspondence to Dr. Chou with our questions.  We allow 10 days for a response.  If we do not receive a response within that time frame, we will make a decision based on the information currently available.

Our receipt of the information is important so that we can complete our evaluation as to whether benefits are payable.  The requested information will assist us in addressing the following unresolved issue(s).

- Clarify the restrictions and limitation due to your claimed medical condition(s)

We expect to make a decision on your claim within 30 days after either speaking with Dr. Chou or receiving a reply to our correspondence within the time frame outlined above.  If the requested information is not received, we may make a decision on your claim at that time.  We will keep you informed through regular status updates.

In addition, we would like to let you know that we received a response from Community Care Behavioral Health regarding your occupational duties.  However, your former employer would not provide any information regarding your position change in July 2015.  Therefore, we will

UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES
1242-03

0287500529181470I

Case ID: 161102841

Claimant Name: Light, Karen Lee
Claim Number: 5206077449002

January 4, 2016
Page 2 of 2

consider your occupational duties as those as outlined in the job description provided by Community Care Behavioral Health.

Dr. Karen Light, if you have questions about your claim or this process; please call our Contact Center at 1-888-226-7959, 8 a.m. to 8 p.m. Eastern Time, Monday through Friday. Any of our experienced representatives have access to your claim documentation and will be able to assist you. If you prefer to speak with me personally, I can be reached at the same toll-free number at extension, 75157. We will identify your claim by your Social Security number or claim number, so please have one of these numbers available when you call.

Sincerely,

*Paula M Krager*

Paula M Krager
Senior Disability Benefits Specialist

02875005291814702

Case ID: 161102841



Filed and Attested by the
Office of Judicial Records
30 NOV 2016 11:32 am
G. IMPERATO

# EXHIBIT E

Unum
The Benefit Center
PO Box 100262
Columbia, SC 29202
Phone: **1-888-226-7959**
Fax: 1-866-562-4704
www.unum.com



February 11, 2016

KAREN LEE LIGHT MD
422 W MOUNT AIRY AVE
PHILADELPHIA, PA 19119

RE:     Light, Karen Lee          DOB: November 19, 1965
        Claim Number:             5206077449002
        Provident Life and Accident Insurance Company

Dear Dr. Light:

We have attempted to reach you on 02/11/2016 to discuss the decision we have made on your Individual Disability benefits. This letter is to inform you that we will not be able to approve the payment of these benefits.

Please read the following pages carefully, as they will help you understand how we reached this decision.

This letter includes the following:

- The decision/reason
- Information that supports our decision
- Policy provisions/definitions
- Next steps available to you if you disagree with our decision

I am available to review in detail the information we have and how this decision was made. You can reach me at 1-888-226-7959, extension 75157.

UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES
1242-03

02875005353023201

Case ID: 161102841

Claimant Name: Light, Karen Lee
Claim Number: 5205077449002

February 11, 2016
Page 2 of 5

### Decision/Reason:

We have determined you are able to perform the duties of your occupation. Therefore, you are not Totally or Residually Disabled, as defined under your policy.

### Information That Supports Our Decision:

On October 1, 2015, you presented a claim for disability beginning May 30, 2014, due to thoracic outlet syndrome, intersectional hand syndrome, back pain and Morton's neuroma. You are a psychiatrist and indicated, in part, that you were unable to perform your occupational duties due to your inability to use the mouse, keyboard and pen, as well as your inability to drive.

We understand your occupation from March 2014 to July 26, 2015 was that of a regional medical director employed by Community Care Behavioral Health. You worked 20 hours a week. Your job duties included reviewing medical and administrative documents, consultations, attend chair and lead meetings, make decisions on difficult cases and travel to other offices.

You reported you were demoted on July 26, 2015. After July 26, 2015, you continued working as a case reviewer. Your duties included reviewing medical and administrative documents across multiple screens and formats; integrating EMR data with emails and other correspondence. This involved a lot of mouse usage and navigating within documents. You also attended meetings to consult and discuss with colleagues about professional matters. You reported you voluntarily terminated your employment from Community Care Behavioral Health effective September 11, 2015.

You have requested Residual Disability benefits from May 30, 2014 to September 11, 2015. Although you were working during this time, you reported you were not able to keep up with your work due to your conditions. You have requested Total Disability benefits from September 11, 2015 forward.

According to the Attending Physician Statement completed by Dr. Larry Chou (physical medicine & rehabilitation) on September 20, 2015, he began treating you for this condition on January 14, 2011. He advised you to cease working on September 21, 2015. Dr. Chou stated that left thoracic outlet syndrome and right wrist intersection syndrome restricted you from lifting or carrying over 5 lbs, using the computer for over 10 minutes at a time, repetitively write, manipulate paper, repetitive keyboard or use mouse, hold the phone or drive safely.

We requested medical records from Drs. Larry Chou, Randall Culp, Michael Cohen, Stephanie Nahas, David Bozentka, David Lewis, Levon Nazarian and Barry Shimmer and test results from Thomas Jefferson University Hospital.

A physician, board certified in internal medicine, reviewed your claim. The physician did not agree with Dr. Chou's opinion regarding your restrictions and limitations. As such, our physician contacted Dr. Chou on January 12, 2016, to clarify your conditions and related restrictions and limitations.

During this conversation, they discussed the medical records describe issues affecting your upper extremities. However, the exam documentation and testing would not be consistent with the restrictions and limitations outlined by Dr. Chou. Dr. Chou opined that, although your gross motor function is intact on physical exam, your subjective pain complaints have been consistent.

Claimant Name: Light, Karen Lee
Claim Number: 5205077449002

February 11, 2016
Page 3 of 5

Dr. Chou stated you describe problems gripping and holding onto things with your hands due to pain. Dr. Chou feels your thoracic outlet syndrome on the left and intersection syndrome on the right contribute to this problem.

Following this conversation, our physician sent correspondence to Dr. Chou to ensure we captured the essence of this conversation. We received and reviewed Dr. Chou's response in which he states he does understand our physician's position of disagreement regarding your restrictions and limitations. Dr. Chou agreed you have no gross motor function deficits. However, he stated you do have objective evidence of left thoracic outlet syndrome as well as intersection syndrome, which he states is the exact cause of your pain. Dr. Chou also opined that patients could have severe pain limiting their function even in the absence of gross motor deficits on examination.

Based on the information in your claim file, support for restrictions and limitations is not found. Our physician states that although you report symptoms of the upper extremities, and different evaluating providers opined different diagnoses, your physical exam findings and imaging studies are not consistent with the presence of a condition that would support restrictions and limitations.

On February 15, 2014, Dr. Randall Culp (orthopedic surgeon) notes he placed you back on sedentary work. He noted this included no lifting more than 10 lbs. and no repetitive use. On January 22, 2016, our physician called Dr. Culp. His office returned our physician's call, advising he would not be able to provide any information or clarify his opinion any further regarding your functional capacity, as he had not seen you since September 2014.

Since there was a disagreement over interpretation of the available information, your claim file was forwarded to a second physician, who is board certified in physical medicine & rehabilitation. This physician agreed with the first physician's opinion. There is no clinical support for a condition(s) that would preclude you from performing your usual activities.

Additionally, as part of our evaluation, we observed your activities. We observed you driving, doing Pilates, standing/walking in a museum for five hours and walking four miles continuously. Our physicians have opined this would not be consistent with symptoms of fibromyalgia contributing to restrictions and limitations.

Based on our review, the information in your claim file indicates you are able to perform the duties of your own occupation. As such, you are not eligible for Total or Residual Disability benefits. Therefore, your claim has been closed effective February 05, 2016.

In addition, based on the financial information you submitted, your Prior Monthly Income was preliminarily calculated at $6,153.00. This is based on your 2013 earnings. Using your tax returns, we averaged your 2014 Monthly Income to be $5,193.00. This resulted in a 15.59% Loss of Monthly Income. Using your 2015 payroll registers, you did not have any Loss of Monthly Income.

As advised above, you are medically not precluded from performing your occupation. In addition, Residual Disability benefits are also not payable for the period of May 30, 2014 to September 11, 2015, as you did not have at least a 20% Loss of Monthly Income, as required by your policy.

Claimant Name: Lighl, Karen Lee
Claim Number: 5206077449002

February 11, 2016
Page 4 of 5

## Policy Provisions/Definitions Applicable to Our Decision:

### Individual Disability Policy 6077449

We previously provided you with a copy of your Individual Disability Policy 6077449 for your reference.  The Policy provisions and/or definitions referred to in this letter can be found in that policy.

Page 4          Total Disability
Page 6          Waiver of Premium
Page 8-9        Residual Disability

Your claim decision was based on the provisions listed above, and the Company reserves its right to enforce other provisions of the policy.

### Next Steps Available to You:

### What if you disagree with the decision?

If you disagree with our decision, you have the right to request an appeal.

### What is an appeal?

An appeal is your written disagreement with our claim decision and a request for a review of that decision.

### How do you request an appeal?

You will need to submit a written letter of appeal outlining the basis for your disagreement.  To ensure handling of your appeal without delay, please include any additional information you would like considered.  This information may include written comments, documents, or other information in support of your appeal.

### What information is available to you?

Upon your written request, we will provide you with all documents, records and other information relevant to your claim for benefits.

### How much time do you have to request an appeal?

You have 180 days from the date you receive this letter.

If we do not receive your written appeal within 180 days of the date you receive this letter, our claim determination will be final.

### Where do you mail or fax your written request for an appeal?

The Benefits Center
Appeals Unit
PO Box 15112
Worcester, MA 01615-0112

02875005353023202

Case ID: 161102841

Claimant Name: Light, Karen Lee
Claim Number: 5206077449002

February 11, 2016
Page 5 of 5

Fax Number: 1-866-562-4794

Our Appeals Unit will send you a letter acknowledging receipt of your appeal including your Appeals Specialist's contact information.

**How does the appeal process work?**

An Appeals Specialist will review your entire claim, including any new information you submitted and may consult medical and vocational experts or other resources. The Appeal Specialist will make an independent decision on your claim.

**How much time does the appeal review take?**

We are committed to making an appeal decision within 45 days after we receive your written appeal. There may be special circumstances in which the review can take longer. We will notify you if more time is needed.

**What if you continue to disagree with the determination after the appeal is decided?**

You will have the right to have a court review the appeal determination by bringing a civil action under section 502(a) of the Employee Retirement Income Security Act (ERISA).

Dr. Light, if you have questions about your claim or this process, please call our Contact Center at 1-888-226-7959, 8 a.m. to 8 p.m. Eastern Time, Monday through Friday. If you prefer to speak with me personally, I can be reached at the same toll-free number at extension. 75157. We will identify your claim by your Social Security number or claim number, so please have one of these numbers available when you call.

Sincerely,

*Paula M Krager*

Paula M Krager
Senior Disability Benefits Specialist

Enclosures:    Policy: Contract

02875005353023202

Case ID: 161102841

# EXHIBIT F

Case ID: 161102841



Unum
Worcester Benefits Center - Appeals Unit
PO BOX 15112
Worcester, MA 01615-0112
Phone: **1-888-226-7959**
Fax: **1-774-437-7141**
www.unum.com

June 28, 2016

NEFF AND ASSOCIATES
ATTENTION: BRUCE L. NEFF
TWO PENN CENTER PLAZA SUITE 1212
15TH STREET & JFK BOULEVARD
PHILADELPHIA, PA 19102

RE:   Light, Karen Lee
      Claim Number:              5206077449002
      Provident Life and Accident Insurance Company

Dear Sir or Madam:

Provident Life and Accident Insurance Company has completed the appeal review on your client, Karen Light's Individual Disability claim.

Please read the following pages carefully, as they will help you understand how we reached our decision.

This letter includes the following:

- Initial Claim Decision

- The Appeal Decision

- Information that supports the Appeal Decision

- Policy Provisions that apply to the Appeal Decision

- Next steps available to you

If you would like me to review with you the information we have and how this decision was made, please call me at 1-888-226-7959, extension 76732.

**Initial Claim Decision:**

It was determined Karen Light is able to perform the duties of her occupation. She is not disabled according to the policy and benefits are not payable.

**Appeal Decision:**

We have determined the decision on Karen Light's claim is correct.

**Information that Supports our Decision:**

UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES.
1242-03

Case ID: 161102841

02875005558325801

Claimant Name: Light, Karen Lee
Claim Number: 5206077449002

June 28, 2016
Page 2 of 9

Dr. Light submitted claim forms in September 2015 seeking disability benefits under the above referenced policy.   Dr. Light reported her disability began on May 30, 2014 due to intersection syndrome, thoracic outlet syndrome, back strain and morton's neuroma's.   Dr. Light reported she stopped working on September 11, 2015.

Dr. Light reported her occupation as a psychiatrist.  Regarding her limitations, Dr. Light reported her computer use is limited; cannot type or use mouse more than a few minutes a day; cannot hold books or a pen for more than a few minutes; cannot prepare food; using silverware is difficult; cannot drive more than 50 miles a week; cannot carry objects; cannot shop; cannot do household chores; cannot pursue old exercise routine; cannot hold phone; difficulty brushing teeth; social life curtailed without ability to drive.

Dr. Light's PM&R physician, Dr. Larry Chou, reported a diagnosis of thoracic outlet syndrome and wrist intersection syndrome.  Dr. Chou listed restrictions as no lifting over 5lbs; no carrying over 5lbs; no computer use for more than 10 minutes at a time; not able to drive safely. Limitations were listed as lift more than 15lbs at any time; carry more than 10lbs at any time; repetitive keyboard use/mouse; unable to drive safely; unable to write; manipulate paper; difficulty holding a phone.

Two company physicians reviewed the available medical information and concluded restrictions or limitations were not supported from any of Dr. Light's reported conditions.  The company determined Dr. Light did not meet her policy definition of Total or Residual Disability.  Dr. Light's claim was denied on February 11, 2016.

You appealed this decision on May 11, 2016.  You submitted additional information in support of your appeal.

As part of the appeal process Dr. Light's file was referred to our medical department for another opinion.  This review was complete be a physician board certified in family practice and a second physician board certified in orthopedic surgery.

The reviewing family practitioner did not find support for any restriction or limitations from May 30, 2014 to the present due to any of Dr. Light's reported conditions.  The reviewing family practitioner noted the following with regard to Dr. Light's multiple conditions:

Medication Side Effects

- The available medical notes do not support the ongoing medications prescribed are causing side effects that rise to the level of impairment.

left brachial plexitis/ Thoracic outlet syndrome (TOS)

- While this condition could preclude capacity for overhead work with the left arm, there is no support for other restrictions or limitations.  Dr. Light's symptoms appear well controlled and, prior to February 2016, she is on no analgesic medications, has declined treatments including preventative neuromodulating medications (e.g. Gabapentin), Botox injections, and surgical release.  Lack of analgesic medications and failure to pursue other potentially curative treatments is inconsistent with severe and impairing symptomatology.

Intersection syndrome

02875005558325802   0000160

- These right hand symptoms were diagnosed in June 2014. Her exams have not consistently shown crepitus, bringing the diagnosis into question.  Office visit notes in September 2014 indicate Dr. Bozentka thinks she has "overuse with an element of Fibromyalgia".  Dr. Chou's office visit note in September 2015 indicates on exam, "no focal strength deficits are identified in either upper limb".  She was seen by a hand specialist, Dr. Culp, in September 2014 whose impression is "fibromyalgia" as "this diagnosis would explain all of her current sxs".  He advised Cymbalta.  Dr. Light did not begin this recommended treatment in 2014, but appears to have started it after claim closure in 2016.
- At the time Dr. Light quit work in September 2015, there is no exacerbation of symptoms triggering increased analgesic treatment, or evidence of abnormal strength exams. Instead, job changes and a threat to her benefits ("Am being demoted at work. Am losing benefits") appear to be her motivation for quitting.

Fibromyalgia (FMS)

- Dr. Light was diagnosed with FMS in September 2014.  When she quit her job, Dr. Chou's September 2015 office visit note indicates that in addition to her upper extremity complaints she has "superimposed FMS, making all of the above worse".  She is offered Cymbalta by rheumatologist Dr. Shimmer who diagnosed her with FMS September 2014.  Dr. Shimmer sees her again April 12, 2016 after claim closure, and Dr. Light does begin Cymbalta.  He consistently encourages her to "participate in aerobic exercise program".  He again documents her "tender points of fibromyalgia..."
- Dr. Light did not begin this recommended Cymbalta treatment in 2014, but appears to have started it two months after claim closure in 2016.  FMS is a chronic pain condition of unknown etiology.  As pointed out by her physician, exercise and structured activity is the foundation of treatment for FMS.   There is no support for restrictions or limitations from this condition which would preclude capacity for full time mostly seated activities.

Morton's neuroma

- Dr. Light lists this painful foot condition as one of her impairing conditions at date of disability.  Exams consistently show normal gait.  On 2016 video surveillance she was walking for miles without abnormal gait. Available data does not support any restrictions or limitations from this condition.

Back strain

- Dr. Light lists this as one of her impairing conditions at date of disability.  There is no abnormal imaging or abnormal SLR testing in the file.  Video surveillance shows her doing Pilates.  Available data does not support any restrictions or limitations from this condition.

Neck Pain

- Dr. Light reports another motor vehicle accident in February 2016 (rear-ended, restrained passenger, no LOC) and March 21, 2016 (Dr. Chou) documents that, "for the first time she is actively asking for some pain medication".   Percocet ½ to one are prescribed.  In view of her increased pain they discussed preventative neuropathic

Claimant Name: Light, Karen Lee
Claim Number: 5206077449002

June 28, 2016
Page 4 of 9

medications again (topiramate, Gabapentin, etc.) however the notes are unclear if she agreed to try these medications.   This visit and the request for analgesic pain medications is more than a month after the motor vehicle accident.

- The available data does not support any restrictions or limitations from this condition that would preclude full time sedentary (DOT) activities.

Functional Capacity - Inconsistencies:

- Dr. Light and some of her providers have said she cannot stand during the work day due to Morton's neuroma. Her gait exams are normal and she was seen on video surveillance walking for 4 miles after standing in a museum for hours. This is inconsistent with any impairment from Morton's neuroma or foot pain.
- Dr. Light's statements are inconsistent with her time seen driving on video surveillance (about an hour of driving for errands on day one and brief driving on day two), handling items with her right hand (keys, seatbelt, steering wheel, items at store, light shopping bag), Steering with left hand while backing up and while going hand-over-hand on the steering wheel, gesturing and pointing easily and frequently with left hand at shoulder and face level while in art museum, handling items with left hand in store, flicking her hair with her left arm abducted, handling a light gift under her left arm, reaching high above her head right-handed to get a card several times, stooping rapidly to bimanually retrieve a fallen item, fluid motion of her neck (right and left up and down), stooping, and walking 4 miles.
- While Dr. Chou reported Dr. Light was not able to drive safely, there is no documentation he reported her to DMV to take away her license, and Dr. Light is seen driving on busy winding roads in heavy traffic, turning her head 180 degrees to back up her car, running errands for about 4 hours on one day of video surveillance (driving time about one hour). This is inconsistent.
- "functional task summary" on March 22, 2016 noted grip strength of 30 lbs on the left, and "significant limitations" in standing and walking.  This is inconsistent with the previous normal JAMAR grip measurements (this attorney-ordered testing is 45% lower than ortho office testing) and this attorney-ordered testing is inconsistent with the surveillance that shows her walking 4 miles, standing and walking for hours in a museum, driving in traffic, handling items, etc.
- Dr. Light offers several (inconsistent) reasons for leaving work:

Dr. Light's file was also reviewed by an orthopedic surgeon.  This physician did not find any support for orthopedic restrictions or limitations from May 30, 2014 to the present.  This physician provided the following rationale in reaching this conclusion:

Conditions of the cervical spine are not consistent with impairment:

- MRI scan on September 9, 2013 shows only mild degenerative changes without evidence of neural element compression.  Electrodiagnostic studies have been negative for evidence of radiculopathy.  On July 31, 2013 Dr. Culp notes a normal examination of the cervical spine.  On April 7, 2014,Dr. Lewis notes "her radiculopathy has mostly resolved"
- There is no record indicating active or ongoing management for conditions of the cervical spine with interventional pain management, spine surgery consultation, or opiate-based pain medication.

Claimant Name: Light, Karen Lee
Claim Number: 5206077449002

June 28, 2016
Page 5 of 9

<u>Conditions of the left shoulder are not consistent with impairment:</u>

- While Dr. Light has MRI scan findings of chronic tendinosis and ac joint degenerative change, symptoms are described for the past 20 years that did not preclude function, medical records document treatment with only a single cortisone injection by her primary care physician on June 18, 2014, and there is no record indicating the pursuit of updated diagnostic imaging or orthopedic surgery consultation for left shoulder conditions.
- On July 31, 2013 Dr. Culp notes a normal examination of the shoulders. While on April 12, 2016, following the motor vehicle accident, Dr. Schimmer notes some findings consistent with impingement on exam; the presence of this is condition is not opined in his assessment nor is it treated.
- Rotator cuff tendinitis/impingement would not preclude sedentary level function at desk level.

<u>Conditions of the left wrist are not consistent with impairment:</u>

- While the left wrist MRI scan shows mild extensor carpi ulnaris tendinosis, this finding is remote from the area of Dr. Light's complaints and exam findings and, by definition, this tendon is not involved in intersection syndrome.
- Medical records are notable for an absence of aggressive management of left wrist symptoms. Left wrist exam findings by Dr. Bozentka on September 23, 2014 are atypical for intersection syndrome and are inconsistent with left wrist MRI scan findings, and this physician opines overuse with an element of fibromyalgia as the etiology of Dr. Light's symptoms.
- While left wrist complaints are noted on evaluation by Dr. Schimmer, including the post-MVA assessment of April 12, 2016, the hand/wrist exam by Dr. Schimmer on April 12, 2016 and September 4, 2014 shows an absence of swelling or tenderness with normal range of motion.

<u>Conditions of the right elbow are not consistent with impairment:</u>

- While on September 4, 2014 and April 12, 2016 Dr. Light indicates right elbow pain on evaluation by Dr. Schimmer, diagnostic imaging is not pursued, the elbows show normal range of motion and are nontender, there is no record of formal treatment (including injection) for elbow symptoms, and fibromyalgia rather than conditions of the elbow are opined on this physician's assessment.

<u>The condition of left thoracic outlet syndrome is not consistent with impairment:</u>

- Dr. Eagle is right-hand dominant and her opined condition of TOS is left-sided. The more generally accepted conditions of vascular and neurogenic thoracic outlet syndrome have been excluded on the basis of diagnostic studies.
- While dynamic left thoracic outlet syndrome has been opined and is consistent with Dr. Eagle's ultrasound studies, this condition implies thoracic outlet compression with motion and the provocative position of arm abduction while turning of the head to the contralateral side is not a required functional activity.
- There is no evidence of muscular atrophy on examination. EMG/NCS of the left upper extremity in November 2014 is normal.
- On February 16, 2015, while pursuing at least 20 hours of functional activity per week, Dr. Cohen notes Dr. Cohen is "doing very well" with much less pain over the hands", and

Case ID: 161102841

0287500555832580



Claimant Name: Light, Karen Lee
Claim Number: 5206077449002

June 28, 2016
Page 6 of 9

the impression is of overall very good improvement with treatment limited to anti-inflammatory medication prior to work outs and avoiding a gym machine that may be flaring her symptoms.

- While examination by Dr. Cohen on February 16, 2015 and April 26, 2016 notes effort based 5 minus/5 weakness of the left ADM, prior examinations by this physician did not show neurological deficits, intervening examinations by Dr. Chou on June 16, 2015, September 21, 2015 and March 21, 2016 show an absence of focal strength deficits, and, if present, this minor weakness of small finger abduction would not preclude functionality.
- Despite worsened complaints, on April 26, 2016 Dr. Cohen notes there is no longer a positive Tinel's over the left brachial plexus.
- While on September 21, 2015 Dr. Chou prescribes a diagnostic scalene injection, possibly to be followed by therapeutic botulinum injection, there is no record indicating the claimant pursued this recommended level intervention. Until following the February 12, 2016, there is no pursuit of aggressive medical management with opiates and neuropathic pain medication.
- While on March 21, 2016 Dr. Chou recommends medication changes and prescribes low-dose Percocet, he opines Dr. Light's symptoms are not severe enough to warrant surgery.
- While Botox injection is endorsed by Dr.Cohen on April 26, 2016, there remains no record indicating this has been pursued.

The condition of right wrist intersection syndrome is not consistent with impairment:

- While on June 2, 2014 Dr. Culp notes findings consistent with right intersection syndrome including crepitation on exam; on July 7, 2014 90% improvement is noted with use of a wrist splint and ergonomic workplace changes, on July 28, 2014 only minimal intersection pain is noted bilaterally on exam, on August 19, 2014 multiple upper extremity complaints are noted that cannot be explained by this hand specialist, and on September 15, 2014 only a diagnosis of fibromyalgia is opined by Dr. Culp with treatment recommendations limited to Cymbalta and a return to sedentary work without repetitive use.
- Exam findings by Dr. Bozentka on September 23, 2014 are atypical for intersection syndrome as well as inconsistent with MRI scan findings, and overuse with an element of fibromyalgia is opined as the etiology of symptoms. The MRI finding of normal extensor tendons in the left wrist is inconsistent with a diagnosis of intersection syndrome. The MRI findings of a 4 mm ganglion cyst at the volar margin of the radioscaphoid joint is remote from the area of Dr. Light's symptoms.
- There is no evidence indicating that cortisone injection or surgery has been recommended or pursued for refractory symptoms of intersection syndrome. Observation of Dr. Light's daily activities does not show the ongoing use of a left wrist splint for symptom management from intersection syndrome.
- Examinations by Dr. Schimmer on September 4, 2014 and April 12, 2016 document normal wrist motion and an absence of tenderness.

General observations are not consistent with impairment:

- While Dr. Light indicates she was involved in a hit-and-run rear-end motor vehicle accident on February 12, 2016, the day following notice of her adverse claims decision, there is no police report or other documentation of this event on file, and, despite reports

Case ID: 161102844

02875005558325802   0000161



Claimant Name: Light, Karen Lee
Claim Number: 5206077449002

June 28, 2016
Page 7 of 9

this event increased her symptoms, there is no record indicating she sought medical care until the March 21, 2016 visit with Dr. Chou.

- On August 19, 2014 Dr. Culp documented Jamar grip strength testing right/left at setting 2 of 56/54 pounds which is consistent with functionality. Examination findings and electrodiagnostic studies have not shown the presence of peripheral nerve compression such as CTS or cubital tunnel syndrome. Rheumatologist Dr. Schimmer has repeatedly opined an absence of inflammatory joint disease.
- Numerous physicians have opined fibromyalgia as a primary contributor to musculo-skeletal complaints.
- Dr. Light's statement of functional capacity in September 2015 is inconsistent with her observed daily activities evidence.
- While there is a statement indicating an intervening MVA, Dr. Light's self limited function and pain behavior during the FCE of March 22, 2016 is inconsistent with video evidence.
- Dr. Light was able to pursue part-time function from March 2014 through September 2015 at approximately 20 hours per week. A well functioning computer transcription program, such as Dragon, would reasonably and substantially reduce the need for keyboarding.
- Records from Dr. Chou on March 21, 2016 indicate a disability evaluation was performed on December 21, 2015; however, the results of this encounter have not been furnished for review.
- It is noted there is insufficient medical evidence in Dr. Light's file to support restrictions and/or limitations as of the result of the February 12, 2016 motor vehicle accident. Although there are records indicating exacerbated symptoms as well as a greater intensity medication management, exam findings are limited and largely unchanged from pre-motor vehicle accident assessments.
- Updated diagnostic imaging studies have not been provided, and surgical and/or injection based treatment has not been pursued. Moreover, the post motor vehicle accident functional capacity evaluation on March 22, 2016 reflects self-limited participation, indicates non-bell-shaped grip strength testing results with the left hand, and otherwise contains no evidence of traditional validity indices to document a consistency of effort.

Based on the totality of the information contained within Dr. Light's file, she is not experiencing any restrictions or limitations from any of her reported medical or behavioral health conditions. Dr. Light is not precluded from performing the material and substantial duties of her occupation. Dr. Light does not meet her policy definition of Total or Residual Disability.

The Benefits Center's determination is factually and contractually correct. I am upholding the decision.

**Policy Provisions that Apply to the Appeal Decision:**

"**Total Disability** or totally disabled means that due to Injuries or Sickness:

1. you are not able to perform the substantial and material duties of your occupation; and
2. you are receiving care by a Physician which is appropriate for the condition causing the disability. We will waive this requirement when continued care would be of no benefit to you.

Case ID: 161102841

Claimant Name: Light, Karen Lee
Claim Number: 5206077449002

June 28, 2016
Page 8 of 9

Your occupation means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled.  If your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem your specialty to be your occupation.

Period of disability means a period of disability starting while this policy is in force.  Successive period will be deemed to be the same period unless the later period:

1.  is due to a different or unrelated cause; or
2.  starts more than twelve months after the end of the previous period (six months after the end of the previous period if benefits are expressed as a number of months – see Maximum Benefit Periods);

in which event, the later period will be a new or separate period of disability.  A new Elimination Period must then be met.  And, a new Maximum Benefit Period will apply."

"**Residual Disability** or residually disabled, during the Elimination period, means that due to Injuries or Sickness:

1.  you are not able to do one or more of your substantial and material daily business duties or you are not able to do your usual daily business duties for as much time as it would normally take you to do them;
2.  you have a Loss of Monthly Income in your occupation of at least 20%; and
3.  you are receiving care by a Physician which is appropriate for the condition causing disability.  We will waive this requirement when continued care would be of no benefit to you.

After the Elimination Period has been satisfied, you are no longer required to have a loss of duties or time.  Residual Disability or residually disabled then means that as a result of the same Injuries or Sickness:

1.  you have a Loss of Monthly Income in your occupation of at least 20%; and
2.  you are receiving care by a Physician which is appropriate for the condition causing the Loss of Monthly Income.  We will waive this requirement when continued care would be of no benefit to you."

**Next Steps Available to your client:**

Upon written request, you are entitled to receive, upon request and free of charge, reasonable access to, and copies of all documents, records and other information relevant to your client's claim for benefits.

If your client disagrees with this decision, you have a right to bring a civil suit under section 502(a) of the Employee Retirement Income Security Act of 1974.

Your client and their plan may have other voluntary alternative dispute resolution options, such as mediation.  One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State insurance regulatory agency.

Case ID: 1611028

02875005558325802    0000161

If you have any questions, please contact me at 1-888-226-7959, extension 76732.

Sincerely,

*Richard A Enberg*

Richard A Enberg
Lead Appeals Specialist
Provident Life and Accident Insurance Company

# EXHIBIT G

Case ID: 161102841

# NEFF AND ASSOCIATES

ATTORNEYS AT LAW

TWO PENN CENTER PLAZA, SUITE 1212
15TH STREET & JFK BOULEVARD
PHILADELPHIA, PA 19102
215-564-3331
215-564-6952 (FAX)
www.neffandassociates.com

August 8, 2016

Ms. Paula M. Krager
UNUM
P. O. Box 100262
Columbia, SC  29202

     Re:  Karen Light, M.D.
       D/O/B:  November 19, 1965
       Claim No:  5206077449002

Dear Ms. Krager:

   In my letter dated May 11, 2016, I advised that you Dr. Light had made the decision to surrender her license and go onto inactive status.  I am enclosing for your records, a copy of a letter dated June 2, 2016, from the Commonwealth of Pennsylvania, Bureau of Professional and Occupational Affairs placing Dr. Light on inactive status, pursuant to her request.

   Please advise if, after your review of this document, UNUM will reverse its position concerning Dr. Light's disability benefits.  Thank you for your attention to this matter.

        Very truly yours,

        BRUCE L. NEFF

BLN:jmcg
Enc.

Cc:  Dr. Karen Light (w/o enc)

Case ID: 161102841

1

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF STATE
BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS
STATE BOARD OF MEDICINE
P. O. Box 2649
Harrisburg, PA 17105-2649
www.dos.pa.gov

June 2, 2016

KAREN LEE LIGHT      9849
422 W MT AIRY AVENUE
PHILADELPHIA PA  19119

License Number: MD050873L
Expiration Date: 12/31/2016

Dear KAREN LEE LIGHT,

   Your request to place your license on inactive status has been processed.   Be advised that while your license is on inactive status, you will not receive any mailings from the Board; however, it is still important that you notify the Board of any address changes.  Physicians please note:  while your license is on inactive status you will not be permitted to write prescriptions.  In addition, your reporting obligations under the Medical Practice Act continue while your license is on inactive status.

   You may reactivate your license at any time by contacting the Board Office for a Reactivation Application.  At that time, you will be required to submit a completed Reactivation Application, evidence of completion of the required CME, and the appropriate fees.

   Please retain this letter for future reference.  If you have any questions, please contact the Board Office.

Commissioner
Bureau of Professional and Occupational Affairs

Case ID: 161102841